Johnson, J.
The supremacy of the Legislature, and its authority to prescribe a rule of conduct, and inflict a punishment, or impose a penalty for its violation, are universally conceded; and it is upon this principle that courts of justice are bound to give effect to its intention. Where that is plain and palpable, we must follow it implicitly. The rules of construction with which the books abound, apply only where the words used are of doubtful import; and are only so many lights to assist us in arriving, with the more certainty, at the true interpretation of the intention. The same principle controls in the interpretation of all statutes, whether public or private, general or special, remedial or penal. Com. Dig. Parliament, R. 10 b. Plowd. 10. Hardr. 208. And the rule that penal statutes, as contradistinguished from remedial statutes, must be construed strictly, is but a mean of ariving at the intention. When a law imposes a punishment which acts upon the offender alone, and not as a reparation to the party injured, and when it is entirely within the discretion of the law-giver, it will not be presumed, that he intended it should be extended further than is expressed; and humanity would require, that it should be so limited in the construction, as to be certain not to exceed the construction. Not so with regard to remedial statutes. These are to be construed so as to redress the mischief, and to guard against all subtle inventions and evasions; for the obvious reason, that it is impossible the law makers could set down, in express terms, every possible case that might occur, in which the remedy might be needful. Bac. Abr. Statute, I. 6, 8.
The pre-existing law, the evils which arose out of it, and the remedy intended to be applied, are useful guides in the interpretation of a doubtful statute. A knowledge of the old law, and the remedy applied by the new, frequently points out the evil, and enables us to correct it. The preamble to an act is some *336 times called the key to the interpretation, and notwithstanding somc d'iCta t0 6se contrary, the title itself may be called in to aid bi a doubtful interpretation. Lord Hale seems to have entertained an opinion, that the title was no part of the act, because . , ™ , ... TT __... no title was amxed to the old statutes; Hardr. 324: but we know, that according to our mode of legislation, the title is prefixed by the. Legislature, and is intended to designate the subject of the act. And in Mills v. Wilkins 2 Salk. 606, Holt, C. J. denied the opinion of Lord Hale, saying, “ it was a sudden opinion.” In fine, whatever may give certainty to a doubtful construction, may be resorted to, no matter from what source it is derived, whether from a comparison of the various parts of the same act, or of different acts on the same subject, the opinions of learned men, or contemporary history. For the general rules, see Bac. Abr. Statute I. Com. Dig. Parliament, R. 10. 1 Bl. Com. 87, el seq.
We are then to inquire, whether the offence charged in this indictment, is within the express terms of this act; for in that case, rules of interpretation are unnecessary. The act provides that “ if any person shall take from any field, not belonging to such person, any cotton, corn, rice, or other grain fraudulently, with an intent secretly to convert the same to the use of such person taking the same, such person so offending shall be guilty of larceny, &.C.” Now the general terms, “ any cotton, corn, rice, &c.” embrace these articles in every possible form, and variety, in which they can exist in the field. If standing, or growing, it is in strictness corn in the field; and so if collected in heaps or parcels, and, according to the letter, would embrace it in the most tender and unripe state, if it were possible to take such an article with a felonious intent; and we are obliged to resort to construction to prevent such an operation of the act.
According to the common law, these articles, when severed from the freehold, were the subject of larceny; there was then no necessity to provide for that case. But taking them when standing in the field was only a trespass, for which the remedy was by action, a very inadequate security; for the expenses of prosecuting an action generally more than counterbalance any benefit derived from it. It is a fact well known too, that the idle and dishonest frequently prey upon their more provident neighbours, by secretly participating with them in their crops of cotton, corn, *337 &c. when they have arrived at maturity, and are fit for market, or use; and the existence of this state of things, shows at once, that this was the evil, against which the Legislature intended to protect the inhabitants; and the same circumstance demonstrates also, that the Legislature never intended, by the general terms, “ any cotton, corn, Sfc.” to embrace these articles in an unripe state. No profit could arise to him who took them; so that one of the ingredients of larceny would be wanting, and mischief could be the only motive.
Harper, J. concurred.
O’Neall, J. dissented.
But the preamble to the act, puts the intention of the Legislature beyond all doubt. It is intitled “ An act to make the fraudulent and secret taking of cotton, corn, and other grain, before severance from the soil, larceny.” So that whether the act be interpreted according to the letter, or according to the true intent and meaning, it is larceny to steal corn, cotton, &c. standing the field. The motion is therefore granted.